**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy No. 22 B 02890 |
| | ) | |
| LEONARD S. DEFRANCO, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Honorable Janet S. Baer |
| | ) | |
| | ) | |
| MARGARET BURKE, | ) | Adversary No. 22 A 00128 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LEONARD S. DEFRANCO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION**

Plaintiff Margaret Burke filed a three-count adversary complaint against debtor-defendant Leonard S. DeFranco, seeking a determination that a judgment debt owed to her by DeFranco is not dischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A), (a)(4), and (a)(6).[1] The matter is now before the Court on Burke's motion for partial summary judgment on the claims under § 523(a)(4) in Count II of her complaint. For the reasons set forth below, the Court finds that there are no genuine issues of material fact and that Burke is entitled to judgment as a matter of law on Count II. As such, Burke's motion will be granted, and judgment will be entered in her favor on Count II.

---

[1] Unless otherwise noted, all statutory and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101 to 1532, and the Federal Rules of Bankruptcy Procedure, respectively.

1

## BACKGROUND

The material facts in this case are gleaned from the docket, the pleadings, and the summary judgment statement and response, as well as the exhibits attached thereto. Among those exhibits are an initial judgment order and a subsequent order awarding attorneys' fees as a measure of punitive damages, both entered in favor of Burke and against DeFranco by the Circuit Court of the Eighteenth Judicial Circuit in DuPage County, Illinois (the "state court") after conducting an evidentiary bench trial, as well as Burke's state court complaint and a transcript of the state court's ruling. (*See* Adv. 22-00128, Dkt. No. 1, Exs. A–C.[2]) Many of the facts that follow are drawn from these exhibits.

Burke and DeFranco met approximately ten years ago, and, over those years, the two of them developed and maintained a friendship. (Tr. at 13:5–16[3]; Dkt. 11 ¶ 8.) In addition to the social relationship that the parties had at that time, Burke asserts that she retained DeFranco—a self-described attorney "registered . . . on the rolls of the Illinois Supreme Court" (Dkt. 11 ¶ 6)—to legally represent her on three different occasions. First, Burke says, she retained DeFranco as her lawyer in mid-2014 to help her acquire an ownership interest in Sovereign Tap, a restaurant located in Plainfield, Illinois. (Dkt. 17 ¶ 6.) About three years later, in March or April 2017, Burke retained DeFranco again, she claims, to represent her as the plaintiff in litigation that was

---

[2] Unless otherwise noted, all docket references ("Dkt. __") are to docket entries in Adv. No. 22-00128.

[3] Transcript citations ("Tr. at __") are to the transcript of the state court ruling on June 24, 2021, which can be found at Docket 1, Exhibit B. The page number citations are to those of the transcript itself—not to the pages of the docket entry.

pending in Will County.[4] (*Id.* ¶ 7.) Not long thereafter, in November 2017, Burke retained DeFranco once more, this time, she says, in connection with the purchase of the real estate on which Sovereign Tap was located. (*Id.* ¶ 8.)

Subsequently, in April 2018, the parties had a "conversation" during which they discussed the possibility of Burke providing DeFranco with a large sum of money. Specifically, DeFranco asked Burke whether she would be willing to provide him with a short-term loan of $180,000 to buy or lease real property on Summit Avenue in Oakbrook Terrace, Illinois (the "Summit Property"). (Tr. at 6:21–7:1, 11:22–24, 13:19–14:2; 14:19–22; *see also* Dkt. 17 ¶¶ 9, 10.) DeFranco told Burke that he needed the money to demonstrate his "financial wherewithal" to the seller and that, although he had sufficient funds in his various investment accounts, he did not want to liquidate those funds for that purpose. (Tr. 13:19–14:2, 14:19–22; *see also* Dkt. 17 ¶ 11.) DeFranco assured Burke that he would keep the loan funds in his bank account, repay her within three months, and execute a promissory note to document the loan. (Tr. at 14:19–22; *see also* Dkt. 17 ¶ 12.) Based on those representations, Burke wired $180,000 to DeFranco's account on May 3, 2018. (Dkt. 17 ¶¶ 13, 14; Dkt. 26 ¶ 14.) Shortly thereafter, DeFranco texted Burke to say that he had received the transfer and would execute a promissory note as the parties had discussed. (Tr. at 14:4–22; *see also* Dkt. 17 ¶ 15.) Despite the representations that DeFranco had made, he failed to keep the $180,000 in his bank account, to execute a promissory note, or to give the money back to Burke (within three months—or at all), despite her repeated demands for repayment. (Tr. at 14:4–22; *see also* Dkt. 17 ¶¶ 17, 18.)

---

[4] According to Burke, that litigation was styled as *Burke v. Gomez*, Case No. 17 CH 1517, in the Circuit Court of the Twelfth Judicial Circuit in Will County, Illinois. (Dkt. 17 ¶ 7.) DeFranco asserts that the defendants in that litigation were Burke's business partners. (Dkt. 26 ¶ 7.)

On August 15, 2019, Burke commenced an action against DeFranco in the state court. (Dkt. 26 ¶ 19.) About five months later, on January 22, 2020, Burke filed a first amended complaint which contained four counts: breach of oral agreement (Count I), unjust enrichment (Count II), breach of fiduciary duty (Count III), and fraudulent inducement (Count IV). (Dkt. 1, Ex. A; Dkt. 26 ¶¶ 20, 21.)

On June 24, 2021, after conducting an evidentiary bench trial and considering the parties' testimony and all of the admitted evidence, the state court entered judgment in favor of Burke and against DeFranco on Count I (breach of oral agreement) and Count III (breach of fiduciary duty) in the amount of $180,000, plus punitive damages in the form of attorneys' fees, which were to be determined at a later date. (Dkt. 1, Exs. B, C; Dkt. 26 ¶ 22.) On the ground of fraudulent inducement in Count IV, the court found in favor of DeFranco and against Burke. (Dkt. 1, Ex. B.) The court did not enter judgment as to Burke's claim of unjust enrichment in Count II, because that count was pled in the alternative to Count I.[5] (*Id.*)

In reaching its decision on Burke's claim of breach of oral agreement in Count I, the state court noted that its analysis was guided by three well-established presumptions under Illinois law (Tr. at 4:5–7): (1) "[w]hen an individual transfers funds to a person who is neither a spouse nor a relative, the law will presume that the parties engaged in a contractual transaction" (Tr. at 4:8–19); (2) "[t]he burden then shifts to the defendant to show by clear and convincing evidence

---

[5] Although the state court did not enter judgment on Count II, it explained that Burke "could still recover her funds under a theory of unjust enrichment." (Tr. at 11:2–10.) Specifically, the court stated that, [g]iven [DeFranco's] failure to rebut the presumption that a gift from a client to her attorney is a product of undue influence," the court had to presume that DeFranco "obtained the funds at issue by exerting undue influence on [Burke]." (Tr. at 11:16–20.) Further, the court said, "[a]ssuming the absence of a valid loan agreement," DeFranco "unjustly retained $180,000, a sizable sum[,] to [Burke's] detriment," and DeFranco's "retention of the funds violates fundamental principles of justice, equity and good conscience." (Tr. at 11:22–12:2.)

that the funds constituted a gift" (Tr. at 4:20–5:3); and (3) even if a defendant successfully

demonstrates that the funds were a gift, "a gift from a client to [her] attorney . . . raises a

presumption of undue influence sufficient to establish a prima facie case" (Tr. at 5:10–20). Given

these presumptions, and based on the parties' testimony and the evidence at trial, the state court

found, in pertinent part, that the parties engaged in a contractual transaction, that the funds at

issue constituted a loan, and that "an attorney-client relationship existed between the parties at

the time of the loan transaction." (Tr. at 5:4–9:17.)

As to its decision on Burke's claim of breach of fiduciary duty in Count III, the one most

relevant to the motion for partial summary judgment here, the state court found that a fiduciary

relationship arose between the parties at the time of the transaction and that DeFranco's conduct

constituted a breach of his fiduciary duty to Burke. (Tr. at 12:20–22, 15:1–4.) To provide context

for and elaborate on its ruling on Count III, the court stated as follows:

> To succeed on a claim for breach of fiduciary duty, the complaining party must prove, one, that a fiduciary duty exists, that the fiduciary duty was breached, and that such breach proximately caused the injury of which the party complains . . . .
>
> A fiduciary relationship may arise as a matter of law from the existence of a particular relationship, such as an attorney-client relationship or a principal-agent relationship, or as a matter of fact, when one party reposes trust and confidence in another, such that the latter gains a resulting influence and a superiority over the former.
>
> In this case, the Court finds that a fiduciary relationship arose between the parties, both as a matter of law and as a matter of fact.
>
> First, [DeFranco] was [Burke's] attorney at the time of the loan transaction, as noted earlier in this decision. This is plainly demonstrated by [DeFranco's] concurrent representation of [Burke] in a case pending in Will County, where [DeFranco] did enter an appearance as [Burke's] counsel.

5

Second, the complaint alleges facts restated in all counts, suggesting [Burke] consider[ed] [DeFranco] a close friend, a legal expert, and a trusted confidant. These allegations were confirmed by [DeFranco's] answer, and later substantiated by clear and convincing evidence at trial, demonstrating that [Burke] typically sought [DeFranco's] advice on legal matters.

This Court finds[,] by reason of the parties' friendship[] [and] attorney-client relationship, [that Burke] reposed her trust and confidence in [DeFranco], allowing him to thereby gain influence [and] superiority over her.

This Court finds that [DeFranco] exploited his fiduciary position in relation to [Burke] and betrayed [Burke's] trust and confidence. Based on the credible evidence in the record, [DeFranco] persuaded [Burke] to loan him a large sum of money by reassuring her that, one, he possessed the value of the funds in a[n] illiquid account, and two, . . . his use of the funds would simply serve as a formality in a time-sensitive transaction concerning the Summit Property.

The evidence at trial demonstrated that [DeFranco] did not use the funds as promised. Moreover, upon receipt of [Burke's] funds, [DeFranco] reassured [Burke] he would draft and execute a promissory note, failed to do so, and later ignored or otherwise stonewalled upon [Burke's] repeated demands for repayment.

The Court finds the parties' understanding [was that DeFranco] would draft and execute the promissory note, evidenced by [DeFranco's] text message, compelling evidence that [DeFranco] was . . . acting as both the borrower and [Burke's] trusted advisor at the time of the loan transaction. As [Burke] testified at trial, [DeFranco] suggested a promissory note to protect [Burke] if anything happened to [DeFranco].

Moreover, the Court finds [Burke's] testimony credible with respect to the promissory note, and the conversations surrounding the loan transaction itself, and [DeFranco's] testimony not credible. [Burke's] testimony is a testament to the trust in confidence [Burke] reposed in [DeFranco].

Under these circumstances, the Court finds [DeFranco's] conduct constituted a . . . breach of his duty to [Burke], both as her fiduciary in law[] and in fact.

The Court further finds that [DeFranco's] breach of the duty warrants an award of punitive damages.

6

> In the months following the transaction, [DeFranco's] conduct can only be described as a deliberate shirking of his loan obligation to [Burke], and the Court finds [DeFranco's] conduct was intentional, willful, and wanton.
>
> By August 2018, it was clear [DeFranco] would not purchase or lease the Summit Property. And by March 2019, it was clear [DeFranco] was dragging his feet on repayment to the extent, that is, that there was any intent to repay [Burke] at all.
>
> For example, [DeFranco] admittedly refused to respond to multiple requests and inquiries for repayment of the loan from [Burke], testifying that he wanted to meet with her to discuss it. But [he] never did discuss it when they met[] and never took any affirmative steps to meet with [Burke] in order to respond to the demands for repayment.
>
> Next, according to [Burke], [DeFranco] provided multiple different reasons for not repaying the loan, and those reasons changed. Importantly, none of the reasons provided ever matched up to [DeFranco's] claim that the money was a gift. On this point, the Court finds [Burke's] testimony credible[] and [DeFranco's] not credible.
>
> Finally, [DeFranco's] text message that he would draft and execute a promissory note, and failing to do so, all while acting as counsel of record for [Burke], and advising her on various other matters is but another example of [DeFranco's] willful and wanton conduct. All of this against the backdrop of a record that is devoid of any meaningful testimony or evidence from [Burke] or [DeFranco] that the money was a gift.
>
> [DeFranco's] conduct after obtaining the loan was not in good faith. His subsequent conduct was performed with full knowledge that the loss to his client would be his gain.
>
> The Court will enter judgment in favor of [Burke] on Count [III], breach of fiduciary duty.

(Tr. at 12:7–16:21.)

Regarding Burke's claim of fraudulent inducement in Count IV, the state court found that the allegations in that count "d[id] not rise to the level of fraud." (Tr. at 16:22–23.) According to the court, "a promise to perform an act, though accompanied at the time with an

7

intention not to perform it, . . . is not such a false representation that will constitute fraud." (Tr. at 16:23–17:3.) "[N]o evidence was presented," the court said, that DeFranco, "at the time of the transaction, both knew [the money provided by Burke] was a loan and had no intention of repaying her." (Tr. at 17:4–6.) "It is possible," the court explained, that DeFranco intended to repay Burke at the time of the transaction; although "[h]e did not[,] . . . that alone does not establish fraudulent inducement." (Tr. at 17:7–10.) As a result, the court entered judgment on Count IV in favor of DeFranco. (Tr. at 17:11–12; Dkt. 1, Ex. B.)

On September 3, 2021, subsequent to the state court's ruling, an order was entered awarding Burke attorneys' fees in the amount of $41,031.25 and costs of $2,570.39, for a total judgment in Burke's favor of $223,601.64. (Dkt. 1, Ex. C; Dkt. 26 ¶ 23.) DeFranco did not appeal either the state court ruling or the two orders entered in connection with that ruling.[6]

About six months later, on March 14, 2022, DeFranco filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code. (Bankr. No. 22-02890, Dkt. 1.) Thereafter, on August 10, 2022, Burke filed an adversary complaint against DeFranco, seeking a determination that the state court judgment is excepted from discharge pursuant to §§ 523(a)(2)(A), (a)(4), and (a)(6). (Dkt. 1.) Subsequently, on January 13, 2023, Burke filed the instant motion for partial summary judgment on Count II of the complaint. (Dkt. 15.) The motion has been fully briefed and is now ready for ruling.

### SUMMARY JUDGMENT

Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (made applicable to

---

[6] Although neither of the parties asserts that DeFranco failed to appeal the state court ruling, the state court docket does not reflect that an appeal was ever filed.

8

adversary proceedings by Fed. R. Bankr. P. 7056). The primary purpose of the summary judgment procedure is to avoid unnecessary trials where no material facts are in dispute. *See Trautvetter v. Quick*, 916 F.2d 1140, 1147 (7th Cir. 1990); *Farries v. Stanadyne/Chi. Div.*, 832 F.2d 374, 378 (7th Cir. 1987). Thus, on a motion for summary judgment, the court must decide, based on the evidence, whether there is a material disputed fact that requires a trial. *Gupta v. Melloh*, 19 F.4th 990, 996–97 (7th Cir. 2021). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where the material facts are not in dispute, the only issue is whether the moving party is entitled to judgment as a matter of law. *ANR Advance Transp. Co. v. Int'l Brotherhood of Teamsters, Loc. 710*, 153 F.3d 774, 777 (7th Cir. 1998).

### 1. Standards

The party seeking summary judgment always bears the burden of establishing that there are no genuine issues of material fact in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether the movant has met her burden, the court must view all reasonable inferences drawn from the underlying facts in a light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 248; *Joll v. Valparaiso Cmty. Schs.*, 953 F.3d 923, 928 (7th Cir. 2020). Once the moving party satisfies her initial burden of production, the party opposing the motion may not rest on the mere allegations or denials in his pleadings; rather, his response must set forth specific facts demonstrating that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 248; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001).

All factual assertions made in a summary judgment motion must be supported by citations to particular parts of material in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials. Fed. R. Civ. P. 56(c)(1)(A); L.R. 7056-1(B). Likewise, a party asserting that a fact is genuinely disputed must support that assertion with citations to the record. Fed. R. Civ. P. 56(c)(1)(A); L.R. 7056-2(A)(2)(a); *Ortega v. United States*, No. 16-cv-8402, 2021 WL 4477896, at *2 (N.D. Ill. Sept. 30, 2021). Facts that are denied without evidentiary support for the denials are deemed admitted. L.R. 7056-2(B) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."); *Maxwell v. Penn Media (In re marchFirst, Inc.)*, Bankr. No. 01 B 24742, Adv. No. 03 A 1141, 2010 WL 4027723, at *2 (Bankr. N.D. Ill. Oct. 14, 2010); *see also Williams v. City of Chi. Bd. of Educ.*, No. 10 C 7105, 2012 WL 3023313, at *4 (N.D. Ill. July 24, 2012) ("[T]o the extent that any of [a party's] denials do not contain a citation to the record or the citation does not support the denial, those statements of fact . . . [are] deemed admitted.").

Affidavits are among the "parts of material in the record" that may be used to support or oppose a motion for summary judgment. "An affidavit is a statement reduced to writing and the truth of which is sworn to before someone who is authorized to administer an oath." *Pfeil v. Rogers*, 757 F.2d 850, 859 (7th Cir. 1985) (internal quotation omitted). Affidavits "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "Affidavits are admissible in summary judgment proceedings if they are made under penalties of perjury; . . .

10

unsworn documents purporting to be affidavits may be rejected." *Pfeil*, 757 F.2d at 859 (citing to

28 U.S.C. § 1746).

### 2. Burke's Statement of Material Facts and DeFranco's Response

The factual background in this matter is made more complicated and muddied by the parties' failure to comply with Federal Rule of Civil Procedure 56 and Local Rule 7056. To support the factual assertions in their respective documents—Burke's statement of material facts and DeFranco's response to that statement—the parties cite primarily to their own affidavits. At first glance, this battle of the affidavits strikes the Court as a he-said, she-said dispute, making summary judgment "a singularly inappropriate time to resolve" the parties' claims. *See Russell v. Bd. of Trs. of Univ. of Ill. at Chi.*, 243 F.3d 336, 340 (7th Cir. 2001). A closer look at the statement and response, however, proves otherwise. The Court examines each of the documents in turn.

First, as to Burke's statement of material facts, more than half of the paragraphs therein are either improper legal conclusions or assertions that are insufficiently supported. Regarding the former, Burke asserts legal conclusions in four of the thirty-one paragraphs in the document. (Dkt. 17 ¶¶ 26, 28, 30, 31.) Because "[i]t is inappropriate to make legal arguments" in a Rule 7056 statement of material facts, *see Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 n.2 (7th Cir. 2008), the Court will disregard those paragraphs. As to the latter, Burke improperly relies on citations to unverified pleadings rather than to evidence. That is, in support of thirteen of the thirty-one paragraphs in the statement, Burke cites only to her adversary complaint and/or DeFranco's answer thereto. (Dkt. 17 ¶¶ 1–4, 10, 14, 16, 18–23.) Citations solely to the operative complaint and answer do not satisfy Burke's obligation to

11

support each factual assertion with evidence from the record. *See, e.g., Mack v. City of Chi.*, No. 16 C 7807, 2019 WL 1331786, at *4 (N.D. Ill. Mar. 25, 2019) (disregarding factual statements supported by citations only to unverified pleadings), *aff'd*, 788 F. App'x 396, 396 (7th Cir. 2019). Notwithstanding the foregoing, DeFranco does not dispute ten of the thirteen insufficiently supported statements (*see* Dkt. 26 ¶¶ 1, 2, 4, 14, 16, 19–23), and the information in most of them can be found in the state court's ruling and corresponding orders.

DeFranco's response to Burke's statement of material facts is equally troubling. Of the thirty-one paragraphs in the statement, he denies all or part of the factual assertions in twenty of them.[7] (Dkt. 26 ¶¶ 3, 5–13, 15, 17, 18, 25–31.) In many instances, however, DeFranco's evidentiary citations do not provide support for his denials, his responses are irrelevant, he fails to cite any record support, and for two statements he provides no response at all. (*Id.* ¶¶ 5–9, 13, 17, 18, 25, 27.) To the extent that DeFranco responds with improper or insufficient support or citation, the Court deems the corresponding statements admitted for purposes of summary judgment. *See* L.R. 7056-2(B).

Also problematic, in support of thirteen of his twenty denials, DeFranco cites only to his own affidavit,[8] which contains supplemental information in the form of unsubstantiated, conclusory allegations.[9] (Dkt. 26 ¶¶ 3, 5–13, 15, 17, 26.) DeFranco submits this affidavit—the one and only piece of admissible evidence that he presents—in an apparent attempt to offer facts

---

[7] Instead of admitting or denying Burke's statements, DeFranco uses the words "undisputed" and "disputed," respectively. (*See* Dkt. 26.)

[8] Curiously, DeFranco's affidavit was filed on March 29, 2023, almost two months after the filing of the response that it purports to substantiate. (Dkt. 31.)

[9] In contrast, most of the statements in Burke's affidavit substantially mirror those in her state court complaint and are supported by the state court's ruling. (*See* Dkt. 21.)

in support of his position and to contradict the assertions made by Burke. While affidavits are allowed in summary judgment proceedings, "self-serving statements in affidavits *without factual support in the record* carry no weight." *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 925 (7th Cir. 2004); *see also D.Z. v. Buell*, Case No. 12 C 7580, 2014 WL 10742634, at *2 (N.D. Ill. Feb. 26, 2014) (explaining that "[a] party may rely on a self-serving affidavit in summary judgment proceedings as long as the record supports the affiant's statements").

Moreover, DeFranco filed the affidavit instead of providing the Court with a statement of additional facts that warrant the denial of summary judgment as Local Rule 7056-2(A)(2)(b) requires.[10] "An affidavit is not a substitute for a statement of [additional] facts . . . , as it does not assist the Court in organizing the evidence and identifying the genuine disputes of material fact." *Lopez v. Newell Rubbermaid, Inc.*, No. 09 C 5551, 2011 WL 1749847, at *1 (N.D. Ill. May 4, 2011). By improperly placing standalone assertions in his affidavit, rather than including them in a separate statement of additional facts pursuant to the corresponding Local Rule, DeFranco deprives Burke of the opportunity to either admit or deny the new assertions, thus defeating the purpose of Rule 7056. *See Gevas v. Dunlop*, No. 18 C 6556, 2021 WL 4061749, at *4–5 (N.D. Ill. Sept. 7, 2021). In its discretion, the Court refuses to consider any of these new facts in ruling on the instant motion for partial summary judgment, *see Cichon v. Exelon Generation Co.*, 401 F.3d 803, 809–10 (7th Cir. 2005), particularly in light of the fact that they are without support in the record.

---

[10] Local Rule 7056-2(A)(2)(b) provides that "[e]ach party opposing a motion for summary judgment under Fed. R. Bankr. P. 7056 must serve and file . . . a concise response to the movant's statement of facts that will contain . . . a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon[.]" L.R. 7056-2(A)(2)(b).

After the procedural dust has settled, a careful review of Burke's statement and DeFranco's response reveals that there are no genuine issues of material fact in dispute. Thus, the only question to be considered is whether Burke is entitled to judgment as a matter of law.

## JURISDICTION

Before turning to the parties' substantive arguments in this matter, the Court addresses Burke's assertion that DeFranco is "barred by the *Rooker-Feldman* doctrine from relitigating the issue of his fiduciary capacity." (Dkt. 15 ¶ 23.) That doctrine prevents courts from reviewing, overturning, modifying, or otherwise rejecting prior judgments entered by state courts. Specifically, the *Rooker-Feldman* doctrine prevents lower federal courts from exercising jurisdiction over cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the [federal] court proceedings commenced and inviting [federal] court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). "The rational for the doctrine is that no matter how wrong a state court judgment may be under federal law, only the Supreme Court of the United States has jurisdiction to review it." *Sykes v. Cook Cnty. Cir. Ct. Prob. Div.*, 837 F.3d 736, 742 (7th Cir. 2016).

DeFranco acknowledges that the *Rooker-Feldman* doctrine prevents the Court from rejecting the state court judgment. At the same time, however, he unwaveringly clings to the same version of the facts that he put forward in the prior proceeding, even though that version conflicts with the state court's findings.[11] (*See* Dkt. 25 at 2 (where DeFranco notes that he "is

---

[11] According to DeFranco, Burke never retained him as her attorney (Dkt. 26 ¶¶ 6, 7; Dkt. 31 ¶ 20); he was not "involved" with the purchase of the Summit Property (Dkt. 31 ¶ 40); Burke was the one who offered *him* the money after he told her that a business he was running was in financial distress (*id.* ¶¶ 25–27); no loan or repayment

14

compelled to . . . tell the truth consistent with his state court testimony which in turn disputes many of [Burke's] assertions").)

Here, the Court is not being called upon to review the state court's findings and need not overturn, modify, or reject them in order to determine the interests of the parties. *See Zurich Am. Ins. Co. v. Super. Ct. of Cal.*, 326 F.3d 816, 823 (7th Cir. 2003) (explaining that the key question in every *Rooker-Feldman* analysis is whether the federal court "is in essence being called upon to review the state-court [decision]" (internal quotations omitted)); *Epps v. Credinet, Inc.*, 320 F.3d 756, 759 (7th Cir. 2003) (noting that if "success in the federal court would require overturning the state court decision," then the federal court lacks jurisdiction over the claim); *see also Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999) (clarifying that the remedy for a party seeking review of a state court decision is the pursuit of a state court appeal). Rather, the Court must decide only whether the state court's findings are sufficient to except that judgment from discharge in bankruptcy.

Accordingly, the Court has jurisdiction to determine the interests of the parties in this matter. That jurisdiction is conferred by 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. The matter is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

## DISCUSSION

In her motion for partial summary judgment, Burke contends that she is entitled to judgment as a matter of law on Count II of her adversary complaint through the application of collateral estoppel. Pursuant to that doctrine, Burke argues, DeFranco is precluded from re-

---

was ever discussed (*id.* ¶ 30); he did not offer to execute a promissory note (*id.* ¶ 32); and he never offered to pay Burke back (*id.* ¶ 33).

litigating the factual issues decided by the state court and those facts establish, as a matter of law, that the debt at issue is nondischargeable pursuant to § 523(a)(4). In response, DeFranco contends that the state court findings do not establish any of the elements necessary for nondischargeability under that statutory provision.

## 1. Collateral Estoppel

Bankruptcy courts generally make independent decisions as to whether debts are nondischargeable under the various provisions of § 523(a). *See Meyer v. Rigdon*, 36 F.3d 1375, 1378 (7th Cir. 1994). It is well established, however, that the doctrine of collateral estoppel, or issue preclusion, applies in bankruptcy discharge exception proceedings. *Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991); *Klingman v. Levinson*, 831 F.2d 1292, 1294–95 (7th Cir. 1987). Accordingly, "if a court of competent jurisdiction has previously entered judgment against [a] debtor," collateral estoppel may bar the debtor from re-litigating "the underlying facts in the bankruptcy court." *Meyer*, 36 F.3d at 1378–79. Indeed, a bankruptcy court may conclude that a debt is nondischargeable based on the evidence of a prior proceeding, as long as the judgment in that proceeding was obtained fairly, the defendant was accorded due process, and the complaint and judgment order are unambiguous that the judgment debt is "of a non-dischargeable nature."[12] *USLife Title Ins. Co. of N.Y. v. Dohm (In re Dohm)*, 19 B.R. 132, 133 (Bankr. N.D. Ill. 1981), *aff'd*, 19 B.R. 134 (N.D. Ill. 1982). By precluding the re-litigation of the same factual issues between the same parties, collateral estoppel preserves judicial resources, lessens the cost and

---

[12] Although Burke did not submit the entire state court record in support of her motion for partial summary judgment in the adversary proceeding, the application of collateral estoppel is appropriate here because Burke's state court complaint, the detailed findings in the state court ruling, Burke's affidavit, and the facts admitted—as well as those deemed admitted—through the summary judgment procedure permit this Court to find that the particular factual issues necessary to a nondischargeability determination were also necessary to the state court's ruling. *See, e.g., Wolbe v. Wheeler (In re Wheeler)*, Bankr. No. 03-60125-RLJ-7, Adv. No. 03-6003, 2003 WL 23742551, at *2–3 (Bankr. N.D. Tex. Dec. 16, 2003).

16

vexation of multiple lawsuits, and prevents the issuance of inconsistent decisions. *Allen v. McCurry*, 449 U.S. 90, 94 (1980); *Sylvester v. Martin (In re Martin)*, 130 B.R. 930, 942 (Bankr. N.D. Ill. 1991).

Where a prior judgment was issued by a state court, the collateral estoppel of that state governs. *Gambino v. Koonce*, 757 F.3d 604, 608 (7th Cir. 2014). Because the judgment against DeFranco was entered in an Illinois state court, the Illinois law of collateral estoppel applies. The elements of collateral estoppel under Illinois law are as follows: (1) a prior case presented an identical issue; (2) the case ended in a final judgment on the merits; and (3) the party against whom estoppel is asserted was a party in the prior case. *Id.*; *Wians v. Wians (In re Wians)*, 523 B.R. 124, 129 (Bankr. N.D. Ill. 2014).

Only the first element is in dispute in this matter. Burke argues that the issues at bar are identical to those in the state court proceedings for purposes of collateral estoppel because the state court's findings satisfy the elements required for nondischargeability under § 523(a)(4). Not surprisingly, DeFranco disagrees. He suggests that collateral estoppel is not properly applied to this matter, because the state court did not find that an express trust or fiduciary relationship existed between the parties or that he committed fraud or defalcation during the course of such a relationship. DeFranco's arguments are without merit.

As to the fiduciary requirement, DeFranco quite rightly asserts that the state court did not find the existence of an express trust between him and Burke at the relevant time but seems to posit that § 523(a)(4) requires such a trust for a nondischargeability finding.[13] (Dkt. 25 at 5–6

---

[13] "An express trust requires an explicit declaration of trust, a clearly defined trust res, and an intent to create a trust." *ColeMichael Invs., L.L.C. v. Burke (In re Burke)*, 405 B.R. 626, 648 (Bankr. N.D. Ill. 2009), *aff'd*, 436 B.R. 53 (N.D. Ill. 2010).

17

(citing *Joseph v. Stone (In re Stone)*, 91 B.R. 589, 593–94 (D. Utah 1988)).) Seventh Circuit precedent firmly establishes that the fiduciary element of § 523(a)(4) may be satisfied by *either* the existence of an express trust *or* a fiduciary relationship between the parties. *Follett Higher Educ. Grp., Inc. v. Berman (In re Berman)*, 629 F.3d 761, 768–69 (7th Cir. 2011) (explaining that "courts have expanded the application of section 523(a)(4) beyond express trusts to certain relationships where the law imposes fiduciary obligations, such as the obligation an attorney owes to a client"). DeFranco's reliance on nonbinding case law from other circuits that provides otherwise is disingenuous.

At the same time, DeFranco claims that the state court findings do not establish that a fiduciary relationship existed between the parties for purposes of § 523(a)(4), because such a relationship requires ongoing business rather than a "one-time transaction." (Dkt. 25 at 7–8 (citing *Catrambone v. Adams*, 498 B.R. 839, 847 (N.D. Ill. 2013); *Thazhathuputhenpurac v. Abraham (In re Abraham)*, 582 B.R. 202, 208 (Bankr. N.D. Ill. 2018)).) In this matter, DeFranco says, there was only one transaction between the parties, and, thus, he and Burke did not have the requisite fiduciary relationship. This argument is both inaccurate and unavailing. While the loan may have been the sole "transaction" between Burke and DeFranco, the state court explicitly found that the parties had an attorney-client relationship and that Burke "typically sought [DeFranco's] advice on legal matters." (Tr. at 13:8–12.) Moreover, although the cases cited by DeFranco in support of his position involved parties who had conducted regular business with each other, the Court's independent research has found no authority in this circuit mandating that more than one transaction is required for a nondischargeability finding under § 523(a)(4).

18

Regarding the element of fraud, that the state court entered judgment in DeFranco's favor on the count of fraudulent inducement does not help him here, given the arguments set forth by Burke. Although Burke hurriedly states in both her motion for partial summary judgment and her brief in support of that motion that she seeks relief based on DeFranco's "fraud or defalcation" (Dkt. 15 at 7; Dkt. 24 at 2), she argues in her brief only that DeFranco's conduct supports a finding of defalcation (*see* Dkt. 24 at 3–6). Because Burke has ostensibly dropped any claims that DeFranco's actions were fraudulent, the Court focuses its discussion below solely on the defalcation element.

Finally, DeFranco advances two arguments in support of his position that the state court findings do not establish fiduciary defalcation. First, DeFranco asserts that "[d]efalcation is defined basically as 'a failure to account for funds entrusted to a fiduciary.'" (Dkt. 25 at 4 (quoting *Antlers Roof-Truss & Builders Supply v. Storie (In re Storie)*, 216 B.R. 283, 287 (B.A.P. 10th Cir. 1997)).) Citing to that definition, DeFranco claims that there is "no evidence" or "allegation" that any of Burke's funds were "entrusted" to him because she voluntarily relinquished access to, control over, and ownership of the funds and that, thus, they were "no longer 'her' money." (*Id.)* This argument is puzzling, erroneous, and unsupported.

Second, DeFranco contends that the state court did not find that he had the requisite state of mind for fiduciary defalcation under § 523(a)(4). In this regard, DeFranco says only that "the state court did not find [him] to be willful and reckless." (Dkt. 25 at 8; *see id.* at 9.) This argument is both unfounded and unsubstantiated. As discussed extensively below, the state court ruling set forth sufficient facts in connection with DeFranco's intent for purposes of a nondischargeability determination. And, in fact, the state court expressly found that DeFranco's

conduct was "intentional, willful, and wanton" and that his breach warranted an award of punitive damages. (Tr. at 15:5–12, 16:8–13.) Such conduct satisfies § 523(a)(4)'s intent requirement. *See Bullock v. BankChampaign*, 569 U.S. 267, 273–74 (2013); *see also Adas v. Rutkowski*, No. 13 C 2517, 2013 WL 6865417, at *9 (N.D. Ill. Dec. 30, 2013) (stating that "willful and reckless" conduct supports a finding of defalcation under the statutory exception); *Catrambone*, 498 B.R. at 851 (defining "willful and wanton" conduct as "a course of action which shows actual or deliberate intention to harm" and thus finding that such conduct constitutes defalcation (internal quotation omitted).)

In sum, the inquiry decided by the state court on Count III of Burke's state court complaint mirrors the current inquiry before this Count under § 523(a)(4). In fact, seldom has the Court been presented with a matter in which all of the required elements align so precisely. Thus, the Court finds that the issues sought to be precluded in this matter are the same as those that came before the state court for purposes of collateral estoppel. Accordingly, the "identical issue" element required under the doctrine is satisfied.

### 2. Section 523(a)(4)

Burke argues that she entitled to judgment as a matter of law under § 523(a)(4) because the state court's findings satisfy the requisite elements under that statutory provision. As the party seeking to establish an exception to discharge, Burke bears the burden of proof by a preponderance of the evidence. *See Grogan*, 498 U.S. at 291; *In re Bero*, 110 F.3d 462, 465 (7th Cir. 1997). Exceptions to discharge must be construed strictly against Burke and liberally in favor of DeFranco. *See Stamat v. Neary*, 635 F.3d 974, 979 (7th Cir. 2011). Although the burden of going forward with the evidence may occasionally shift, the ultimate burden remains with

Burke. *See Sears, Roebuck & Co. v. Green (In re Green)*, 296 B.R. 173, 179 (Bankr. C.D. Ill. 2003); *see also Penix v. Parra (In re Parra)*, 483 B.R. 752, 774 (Bankr. D.N.M. 2012).

Turning to the statutory exception at issue, § 523(a)(4) provides that a debtor cannot discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]" 11 U.S.C. § 523(a)(4). Thus, to demonstrate a claim under § 523(a)(4), Burke must prove that DeFranco committed: (1) fraud or defalcation while acting as a fiduciary; or (2) embezzlement; or (3) larceny. *See id.* Burke has invoked only the fraud or defalcation prong of the statute.

In order to prevail under that prong, Burke must establish the following elements: (1) the existence of an express trust or fiduciary relationship between her and DeFranco; and (2) fraud or defalcation committed by DeFranco in the course of that relationship. *See Estate of Cora v. Jahrling (In re Jahrling)*, 816 F.3d 921, 925 (7th Cir. 2016); *Berman*, 629 F.3d at 765–66, 768–69; *Zamora v. Jacobs (In re Jacobs)*, 448 B.R. 453, 477 (Bankr. N.D. Ill. 2011).

Burke does not allege that an express trust existed between her and DeFranco; rather, she contends that there was a fiduciary relationship between the parties. The existence of a fiduciary relationship under § 523(a)(4) is a matter of federal law. *In re McGee*, 353 F.3d 537, 540 (7th Cir. 2003); *Schaffer v. Dempster (In re Dempster)*, 182 B.R. 790, 801 (Bankr. N.D. Ill. 1995). Although "[b]ankruptcy law depends on, and implements, entitlements defined by state law, . . . which of these entitlements is subject to discharge . . . is beyond state control." *McGee*, 353 F.3d at 540. Thus, the Court turns to federal law to decide whether a fiduciary relationship existed between Burke and DeFranco.

21

In the Seventh Circuit, a fiduciary relationship may arise for purposes of § 523(a)(4) when there is "a difference in knowledge or power between fiduciary and principal which . . . gives the former a position of ascendancy over the latter."[14] *Marchiando*, 13 F.3d 1111, 1116 (7th Cir. 1994); *Stair One, Inc. v. Hivon (In re Hivon)*, Bankr. No. 14 B 26441, Adv. No. 14 A 710, 2015 WL 687124, at *6–7 (Bankr. N.D. Ill. Feb. 13, 2015) (quoting *Marchiando*); *see also McGee*, 353 F.3d at 541 (noting that "many fiduciary relations are characterized by disparities in the knowledge . . . of the participants"). Only fiduciary duties existing prior to the debt fall within the ambit of the statutory exception. *Berman*, 629 F.3d at 769.

In this matter, both the state court's findings and DeFranco's admissions sufficiently establish that he had fiduciary obligations to Burke for purposes of § 523(a)(4) and that there was a substantial inequality in both knowledge and power between the parties, which gave DeFranco a position of ascendancy over Burke. According to those findings and admissions, DeFranco filed an appearance on Burke's behalf in a lawsuit that was pending in Will County at the relevant time and therefore was Burke's counsel when the loan transaction took place. As a result, the state court found that a fiduciary relationship arose between the parties as a matter of law. The result is the same under applicable federal law. *See, e.g., Marchiano*, 13 F.3d at 1115 (stating that "a lawyer is deemed the fiduciary of his client" for purposes of § 523(a)(4));

---

[14] Contrary to this fundamental precedent by which the Court is bound, DeFranco contends that "an inequality between the parties' knowledge or bargaining power" is not "sufficient to establish a fiduciary relationship for purposes of [non]dischargeability" under § 523(a)(4). (Dkt. 25 at 5–6 (quoting *John J. Christiansen Tr. v. Maloney (In re Maloney)*, Bankr. No. 09-20450, Adv. No. 09-2210, 2010 WL 5069865, at *8 (Bankr. D. Utah Dec. 7, 2010) (internal quotation omitted), and also citing *Stone*, 91 B.R. at 593–94).) As just noted, the Seventh Circuit has stated, in fact, that the key feature of a fiduciary relationship under the statutory exception is "a difference in knowledge or power" between the parties that gives the fiduciary ascendancy over the principal. *Marchiando*, 13 F.3d at 1116. DeFranco's dependence on antithetical authority is misguided.

22

*Catrambone*, 498 B.R. at 847 (explaining that the attorney-client relationship is a "paradigmatic example[] of [a] fiduciar[y] in a position of 'ascendancy' over a principal").

The state court also determined that a fiduciary relationship arose between Burke and DeFranco as a matter of fact. Specifically, the state court found that Burke considered DeFranco both a "legal expert" and a "trusted confidant," a fact which DeFranco admitted in his state court answer and was "later substantiated by clear and convincing evidence at trial." (Tr. at 13:5–10.) As such, the state court said, Burke routinely sought DeFranco's advice on legal matters and, by virtue of the parties' friendship and their attorney-client relationship, "reposed her trust and confidence in [DeFranco], allowing him to thereby gain influence [and] superiority over her." (Tr. at 13:13–16.) Based on the evidence in the record, the state court determined that DeFranco exploited his fiduciary position and power and betrayed Burke's trust and confidence by persuading her to loan him the large sum of money at issue.[15]

On the basis of the state court's ruling, as well as DeFranco's admissions, the Court concludes that DeFranco had superior knowledge and power that gave him a position of ascendancy over Burke. Given that ascendant position, the Court holds that a fiduciary relationship existed between the parties for purposes of § 523(a)(4).

---

[15] DeFranco argues that the factual findings in the state court ruling do not satisfy the fiduciary relationship element of § 523(a)(4), because the fiduciary in such a relationship must hold a position of "ascendancy and control" over the person on whose behalf he acts. (Dkt. 25 at 7–8 (citing without specific page citations to *Phlamm v. Mukenschnabl (In re Mukenschnabl)*, 643 B.R. 218 (Bankr N.D. Ill. 2022), and *Marchiando*, 13 F.3d 1111 (7th Cir. 1994)).) In this matter, DeFranco says, the "paramount" finding of control is lacking because he did not have control over either Burke or her financial accounts and business interests. (*Id.*) In support of his argument, DeFranco distinguishes between "influence [and] superiority" found by the state court (Tr. at 13:13–16) and "ascendancy and control." (Dkt. 25 at 7–8.) Any such distinction, however, lacks substantive practical effect. *See, e.g., American Heritage Dictionary* (2d ed. 1985) (defining "ascendant," in part, as "[d]ominant in position or influence" and "control," in part, as "[a] restraining act or influence"). As discussed above, the state court's findings sufficiently establish that DeFranco held a position of ascendancy over Burke, and, thus, a fiduciary relationship existed between the parties.

23

As for the second element of the statutory exception, the state court's findings and DeFranco's admissions also establish defalcation. Although not defined in the Bankruptcy Code, "defalcation" loosely means "'a nonfraudulent default.'" *Bullock*, 569 U.S. at 272 (quoting *Black's Law Dictionary* 479 (9th ed. 2009)). The term has also been defined as the "failure to meet an obligation; [the] misappropriation of money held in a fiduciary capacity; [and the] failure to properly account for such funds." *S. Cal. Gas Co. v. Collier*, Bankr. No. 08 B 22708, Adv. No. 08 A 01008, 2010 WL 1241778, at *4 (Bankr. N.D. Ill. Mar. 23, 2010) (internal quotation omitted); *see also Zitt v. Roberts (In re Roberts)*, Bankr. No. 10 B 06420, Adv. No. 10 A 01298, 2011 WL 4102540, at *7 (Bankr. N.D. Ill. Sept. 14, 2011).

Although intent or bad faith is not necessary, the United States Supreme Court has held that, for purposes of § 523(a)(4), defalcation requires "knowledge of, or gross recklessness with respect to, the improper nature" of the fiduciary's conduct. *Bullock*, 569 U.S. at 269; *see also Meyer*, 36 F.3d at 1385 (holding that defalcation requires at least reckless conduct). Specifically, the Supreme Court has explained that defalcation "requires an intentional wrong" and that "[w]here actual knowledge of wrongdoing is lacking, the [Court] consider[s] conduct as equivalent if the fiduciary consciously disregards (or is willfully blind to) a substantial and unjustifiable risk that his conduct will turn out to violate a fiduciary duty." *Bullock*, 569 U.S. at 273–74 (internal quotations omitted). The risk "must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a *gross deviation* from the standard of conduct that a law-abiding person would observe in the actor's situation." *Id.* (internal quotation omitted).

24

Here, the facts in the state court ruling, as well as DeFranco's admissions, demonstrate that DeFranco failed to meet obligations that he owed to Burke and that he acted with actual or deliberate intent to harm. According to the state court's findings, the parties' understanding of the loan transaction was that DeFranco "would draft and execute [a] promissory note," which would protect Burke "if anything happened" to DeFranco, and that he would repay Burke the money that he borrowed from her. (Tr. at 14:3–18; 16:8–9.) The state court further found that DeFranco did not use the funds to purchase or lease the Summit Property as promised, did not draft and execute a promissory note, and did not repay Burke. As to the latter, the state court found that DeFranco ignored and evaded Burke's "repeated demands for repayment" and never took any "affirmative steps" to meet with Burke to respond to those demands. (Tr. at 14:4–9, 15:18–24.) Moreover, the court stated, Burke credibly testified that DeFranco gave her many different reasons for failing to repay the loan, none of which aligned with DeFranco's claim that the money was a gift. Under these circumstances, the state court found, DeFranco's conduct in the months following the transaction could be described only as "a deliberate shirking of his loan obligation" to Burke, with DeFranco's "full knowledge that the loss to [Burke] would be his gain," all "while acting as counsel of record" for Burke and "advising her on various other [legal] matters." (Tr. at 15:8–11, 16:8–19.) As a result, the state court concluded that DeFranco's conduct was "intentional, willful, and wanton" and constituted a breach of his duty to Burke as her fiduciary, both in law and in fact. (Tr. at 15:11–12, 16:8–13.)

Considering all of the state court's findings, in addition to DeFranco's admissions, the Court concludes that DeFranco's conduct rose to the level of defalcation for purposes of § 523(a)(4). He willfully persuaded Burke to loan him the money at issue by virtue of his

25

ascendant position over her, agreeing to both execute a promissory note and repay the borrowed funds. Accepting the money from Burke and then failing to honor his promises, DeFranco behaved knowingly and purposefully, making self-serving decisions and intentionally avoiding his obligations. DeFranco had to have known that his failure to repay Burke was wrong, and he acted with gross recklessness, consciously disregarding the "substantial and unjustifiable risk" that his actions would result in the violation of his fiduciary duty to her.

In sum, the state court's findings, together with DeFranco's admissions, comprise the elements of a nondischargeability claim under § 523(a)(4). DeFranco owed a fiduciary duty to Burke for purposes of the statutory exception because of his superior knowledge and power, and he committed defalcation while acting as a fiduciary. The requirement that the fiduciary duty existed prior to the debt has also been satisfied, because DeFranco was a fiduciary before the judgment debt arose. Accordingly, Burke is entitled to judgment as a matter of law pursuant to § 523(a)(4).

### 3. Costs and Fees in the Adversary Proceeding

Finally, Burke seeks to recover the costs and fees arising from the litigation in this adversary proceeding. (*See* Dkt. 15 ¶¶ 27, 28.) DeFranco does not address this request.

Under the traditional "American Rule," each party bears his own costs and fees, absent statutory or contractual authority providing otherwise. *Swanson v. Am. Consumer Indus., Inc.*, 517 F.2d 555, 559 (7th Cir. 1975); *see also Brandt v. Schal Assocs., Inc.*, 960 F.2d 640, 646 (7th Cir. 1992). Bankruptcy Rule 7054 provides such authority here, allowing courts to consider the award of both costs and fees to the prevailing party.

26

Specifically, Rule 7054 gives bankruptcy courts the discretion to award costs to the prevailing party in bankruptcy proceedings unless a federal statute or the Federal Rules of Bankruptcy Procedure provide otherwise. Fed. R. Bankr. P. 7054(b) (stating that "[t]he court *may* allow costs to the prevailing party except when a statute of the United States or these rules otherwise provides" (emphasis added)). For purposes of Rule 7054, "costs" are defined as "an allowance which the law awards to the prevailing party against the losing party as an incident of the judgment to reimburse a party for certain expenses which that party has incurred in the maintenance of the action." *Banco Bilbao Vizcaya Argentaria Puerto Rico v. Vazquez (In re Vazquez)*, Bankr. No. 09-01574 BKT, Adv. No. 10-00088, 2011 WL 3889245, at *1 (Bankr. D.P.R. Aug. 31, 2011), *aff'd,* 471 B.R. 752 (B.A.P. 1st Cir. 2012). Those costs include Clerk's Office fees; fees for printing, witnesses, copies of necessary materials, and transcripts; compensation for court-appointed experts and interpreters; and various docket fees. *See* 28 U.S.C. § 1920.

In this matter, DeFranco has failed to point to a federal statute or bankruptcy rule that would preclude the Court from awarding Burke the costs that she incurred in pursuing this adversary proceeding. Accordingly, the Court will consider such an award. Burke is directed to file a detailed statement of her costs for the Court's review, as well as to serve a copy of that statement on DeFranco. L.R. 7054-1(A).

Burke's request for the assessment of attorneys' fees against DeFranco is similarly left to the discretion of the Court, but such a request "must be made by motion." *See* Fed. R. Civ. P. 54(d)(2)(A) (made applicable to adversary proceedings by Fed. R. Bankr. P. 7054(b)(2)(A)). In considering the award of attorneys' fees, the court's discretion must be "exercised with

27

restraint." *In re Roco Corp.*, 37 B.R. 770, 775 (Bankr. D.R.I. 1984); *see also James v. Prince (In re Prince)*, Case No. 16-80978-TRC, Adv. No. 16-8026-TRC, 2017 WL 2601889, at *1 (Bankr. E.D. Okla. June 15, 2017). Indeed, the court's authority to award such fees is not unrestricted and must be "reserved for exceptional situations." *Roco Corp.*, 37 B.R. at 775.

As the prevailing party here, Burke will be granted leave to file a motion for the attorneys' fees that she incurred in connection with the instant adversary proceeding. Based on its knowledge of this matter, however, the Court has serious reservations about whether Burke can establish the type of exceptional circumstances that would justify the award of attorneys' fees against DeFranco. If Burke chooses to file a motion for attorneys' fees, she must do so no later than fourteen days after the entry of this judgment, identify the exceptional circumstances that demand redress, include with the motion supporting time sheets itemizing the fees sought, and comply with the other requirements set forth in Federal Rule of Civil Procedure 54(d)(2)(B).

## CONCLUSION

For the foregoing reasons, the Court finds that DeFranco is precluded from re-litigating the factual issues decided by the state court and that those facts, along with the ones admitted by DeFranco, establish, as a matter of law, that the debt at issue is excepted from discharge pursuant to § 523(a)(4). As such, Burke's motion for partial summary judgment on Count II will be granted, and judgment will be entered on that count of the adversary complaint in favor of Burke. A separate order will be entered consistent with this Memorandum Opinion.

Dated: **March 15, 2024**         ENTERED:

Janet S. Baer
United States Bankruptcy Judge

28